Okay Ms. Felinza I want to say just before you do so it doesn't go against your time I know you made a motion to postpone it until video conferencing was available and as you know that was denied hopefully when this concludes you'll feel that you had a chance to communicate your concerns that we had a chance to express our concerns and that both of you had a chance to address the questions that we had I really feel pretty confident that this format will not in any way interfere with your ability or Mr. Sinatik's ability to communicate with us nor for us to communicate with the two of you all right well I appreciate that your honor thank you your honor you want to go ahead then sure may it please the court my name is Lisa Freeland and I'm here on Mr. Williams Sixth Amendment right to trial by an impartial jury was violated and a writ of habeas corpus can and should be granted under the more stringent objective honesty test I'd like to start today by addressing the questions in the court's May 11th letter I hear some beeps should I wait yeah I'm not I'm not sure what that means there's their likely law clerks dialing in okay okay this case has always involved actual bias on the part of the jurors because the facts that were developed the path to relief under the Stephen under subjective honesty test necessarily involved an initial showing by mr. Williams of actual racial bias in order to demonstrate that the jurors lied on what year about racial bias mr. Williams first had to establish that the Commonwealth's defense has always been that the jurors in this case were not actually biased they were unenlightened or they parroted language heard because of how and where they were raised but the use of the slurs and other evidence in this case the Commonwealth argued did not even bias let me ask you the whole concept of subjective bias subjective bias here I know we're kind of incredibly out of place because the research is all over the place that one can be incredibly biased not realize that the bias they can think you're the first person in the world in fact I remember I was a common piece for a judge I'll never forget it why dear individual for dear in the case of a black and white rape and I had a juror look me straight in the eye and tell me she was not biased and I believe she believed that and the question that she was answering was whether or not a white woman could ever consent to have sex with a black male and she said of course not and she was absolutely telling the truth as far as she was concerned so the whole idea of objective bias seems just really off the wall and it also seems to me and I'll ask mr. semantics and this is that the Constitution does not guarantee subjective fairness it guarantees fairness period and especially after opinion Rodriguez it's very clear that in this area of racial bias we're not talking about subjective belief in fairness but the criminal justice system absolutely demands objective fairness not a biased jury that thinks that they're being very fair so I know that's beyond a softball to you but I'm down in subjective bias announcing that I guess it's anywhere right well I have a couple of answers to that question and the first one just as an aside is that the Commonwealth in the to view and analyze this case as one of unconscious bias even though it really doesn't fit given the evidence that there would be unconscious bias but I accept your honors kind of assessment of the evidence the science on this is all over the place but neither the Commonwealth nor the district court ever looked at this as possibly a situation involving unconscious bias they simply you did not argue that correct you've always accepted the subjective bias framing as far as I can tell from the papers well I I never argued anything about unconscious bias because it wasn't raised I did early on the decision was made by the court that the subjective honesty test applied and in my proposed findings in fact in conclusions of law as well as in my brief to this court in the district court I said that I was not conceding that it was a subjective honesty test but I believe that I could meet that more stringent standard in in my briefs to this court I directly argued that if on this evidence the subjective honesty test could allow this conviction to stand that another test had to be applied all right and not permittably conceded it but neither did you preserve it below as I understand it can you tell me it's judge Beavis when I read McDonough talks about an honest though mistaken belief not being enough to invalidate and our presidents and Hodge and Richard say the same thing how did those decisions leave any room for anything other than a subjective report of bias well I'm going to give you a couple answers also judge be this I I disagree that the issue of an objective test was not preserved below but looking at the McDonough standard and the dichotomy that it sets up that something is either an honest mistake or an intentionally incorrect answer take that standard and apply it to this case the district court found that there was not an intentionally incorrect answer if you want to put it in the parlance of McDonough but this case the issue in this case also can't be fairly characterized as an honest mistake and the the cases that this court has addressed in the past substantially differ on their facts and the potential outcome of the application of a subjective honesty standard and I would suggest that this court is not bound by those decisions involving you know substantially different factual matters to rule in this case that a juror could in fact be actually biased but that nevertheless the Sixth Amendment wasn't violated honestly mistaken I'm sorry when I look at your reply brief you're heading number one of what you how you brief this argument is Ronald William proved several jurors lied when I read lie lie means it's not an honest mistake and that's how you briefed it and I understand you you have an invitation the key to talk more broadly but all the briefing and all that the the state has been put on notice to be briefing here has been about whether they were lying or not and so maybe we can focus on the issue as you briefed it which is can you satisfy if that's the burden and let's set aside whether that's the burden judge Mickey is raising a different possibility but if we get vast preservation and that's the burden can you satisfy a burden of showing they've absolutely I mean the I mean the evidence that was presented and I'll give you just one example from juror Bowser and you'll find it in the appendix at page 77 juror Bowser himself thought the use of the word nigger was proof of being racist that was his testimony and there was also testimony that he in fact used that term if you only look even that narrowly at the jurors here they understood what they were saying and the import of their comments when they use the racial slur they knew that it was evidence of racial bias and they offered a different response at the at the trial court Miss Freeland may I ask what do we do we are a court of review not first view we have a district court that actually heard all of these witnesses testify we have a district court to which these arguments were made it it heard them it weighed them it considered and the district court of appendix 21 found that their subjective belief was that they honestly answered the questions posed to them now how are we unclearly erroneous review supposed to disregard that the district courts much better opportunity to observe and evaluate the witnesses a finding that you just referenced was based on another finding that the jurors had testified that they honestly answered the questions on what year and if you look at the record the record is void of evidence that the jurors actually said that so the subsidiary finding that you referenced is actually the critical finding that they were being subjectively honest is built on a of cards it's built on a statally flawed finding that when you look at the evidence in the record is not supported not one of these jurors said that they honestly answered the question that was posed to them when it was posed to them on what year the other point that you make about the district courts ability to observe these jurors and take in all of the evidence the district court has not said a word in support of its finding about the credibility of the jurors the word credibility is never used it doesn't reference the jurors demeanor their inflection it doesn't reference the totality of their testimony including in this case their prior testimony at a prior hearing where they were found to have not been credible in testifying about their services jurors in this case and so the findings here I understand how you would call them credibility findings but there's nothing in the district courts opinion that indicates that he actually credited the jurors for the reasons that underpin the strong deference that's been afforded credibility determinations and in this case this is precisely the kind of case where this examination of the record and determine whether or not those findings are clearly erroneous I agree that credibility determinations are accorded deference but this court is not required to affirm even a credibility determination based on demeanor to the exclusion of the entire record and that's what would happen in this case if this court on review were to find that finding that the district court findings were not clearly erroneous in the first instance the predicate finding is not supported by evidence which is the standard for finding it clearly erroneous and that leaves the critical finding also wanting of evidence to support it I do want to get back also to judge McKee's questions about unconscious bias and the bias that was found here there there can be no doubt that in reaching its decision the district court had to confront the question of whether the jurors were actually biased it could not have found that they were honestly mistaken had it not also found or rejected that they were actually biased and that's part of the reason why the honestly mistaken test doesn't sit here and why I've argued that if applying the subjective honesty test would allow the court to affirm a conviction when the jurors are actually biased but believed that they and other cases of this court there is nothing in those cases that stands in the way of this court saying this case is factually distinguishable does not fit within this frame and finding that the subjective honesty test does not apply miss Freeland I it's judge me this again I think you are right that our law deals with these issues however I there's a difference between the Smith and the McDonough lines I mean I the way I read Hodge and Richards Smith sir but sorry uh McDonough requires a subjectively incorrect answer which is which is quite a high standard when people saying oh I wasn't hurt in an accident or I didn't know him in McDonough and Hodge and Richards is not enough but there's the Smith line of cases which is a separate line of cases that goes directly to the bias issue you're suggesting that if we don't allow recovery on the McDonough there will never be recovered you know a possible defendant would prevail but Smith would get at that issue more directly if it had been preserved so maybe that's a segue to I see that your clients earlier counsel argued this and the second PCRA petition in the state court but I don't see anything else in the record that suggests that the Smith claim is properly before us am I am I mistaken is there a place you can point me to that preserve that issue the Smith at the Smith claim not as a McDonough claim yeah I don't your honor I don't think that I can point you to anything where the Smith claim as a distinct claim was preserved I think my argument is that the issue of actual bias was before the district court and if you have concerns about whether or not that case that that issue is properly before this court a remand to the district court for the district court to consider the actual bias of these jurors under that legal state other under the Smith standard would be appropriate and it took about what eight years I don't know why well yes I mean and I mean I would obviously ask the court that if it were going to remand either for further fact-finding or for a consideration of the actual bias of these jurors under the Smith framework that there be some time limit set on the the time permitted for that because as you say judge McKee it was actually five years that it took the district court from the final briefing to decision in this case in the first instance time is expired I see that my time is up one question here does the affidavit of the Montgomery affidavit satisfy the exceptional circumstance so the circumstances required to to trigger the trigger you know the residual exception to the hearsay rule yes your honor as I presented both in the district court and in my reply brief I think that each of the factors that this court has identified for assessing the admissibility under the residual exception or met in this case I can take you through them one at a time if you would like yeah I think that the most outstanding factors with respect to the trustworthiness of the statement are the Supreme Court over the statements of the jurors in this case in vacating mr. Williams death sentence but also the fact that the Commonwealth has had the opportunity had the opportunity to speak with and or examine this Montgomery and the only reason you know that didn't happen was because the testimony was then barred under rule 606 B well what is your response to the Commonwealth argument that the affidavit should not have it accepted under hearsay habeas rule 7 you go to the Commonwealth question but both the admissibility as well as the veracity I guess of Montgomery's allocations well I'm the district court did not admit the affidavit because it found that it that the statements in it were uttered during deliberations and that it also did not meet the standard under Pena Rodriguez so it never reached the question of whether it was admissible under the hearsay rule I have suggested that affidavit can be admitted into evidence and have been by this court in the past in granting habeas relief but the district court itself did not find that the statements were either admissible or inadmissible under the hearsay exception your briefing your brief asserts in any event that even without considering the Montgomery affidavit we should rule in your favor is that correct absolutely your honor mr. Lynn's judge be yeah any reason your the affidavit would not be Teague barred Pena Rodriguez was decided long after this conviction became final on direct review well and your honor I don't think that the retroactivity doctrine is relevant to the admissibility of the evidence the question is whether at the time of the evidentiary hearing which was in 2012 and when the case was decided after briefing on Pena Rodriguez whether or not federal rule of evidence 606 B would allow it under the standard the Supreme Court announced and so the issue the prior issue is whether the state rule 606 B barred the testimony back in 19 you're testing my memory now I think 1988 it may have been or 89 but the question in this case is whether at the time of the evidentiary hearing and the time of the district court's decision whether the rules of evidence as thank you does that answer your question sufficiently yeah I understand what you're getting it okay I meant to reserve three minutes for rebuttal but I admit that I did not do it at the beginning of my argument thank you very much for your argument mm-hmm thank you it's just a medic thank you your honor may it please the court my name is Deputy Attorney General Greg somatic here on behalf of the respondent a police I would submit to the court that this matter has been framed throughout the litigation as a McDonough claim and I think that implicit in that is the assertion that the credibility of the jurors is to be viewed under the subjective analysis and I would submit in light of facts and circumstances this case there is no other form of analysis that would be workable or tenable in that you are trying to decipher the internal thought process and mental attitude for lack of a better term of jurors here now 30 some odd years after the fact I think that I know you make that argument in your briefs and we also time you're often time you're the you know the court can't go back and read mind you to leave every criminal case requires the jury to do exactly that you're in required basically to turn the intent of the person on trial so I'm not that influenced by an argument that we now can't go back and tell them what the jurors are thinking let me ask this the thing that disturbs me here even let's assume that when you're dealing with subjective honesty it would be one thing if the juror get up and all the way through said yeah I can be fair I can be fair I can be fair I hate those people that doesn't mean I can't be sure to them and by the way I don't think even look around you look at the demographic evidence I see nothing wrong with doing them differently than I do people that's one thing but when you have a situation where a person has a record of using racial slurs and then denies that that would seem to suggest in this expert testimony here to substantiate that and in fact the person was subjectively lying when they suggested there it says that they really did not harbor I had to be where they have been biased they would have not changed their answers in terms of how they was hurt by folks well your honor since you mentioned expert testimony I would submit that it is rather less clear-cut than that in that mr. Williams own expert was unable to opine whether or not these specific jurors were or were not being subjectively dishonest and likewise he also conceded that a denial of prejudice was could also be consistent with a lack of concealment of prejudice that actually existed that's my that's my that's my question here they did conceal it because they said what one witness denied making the statement said later on it was established that he he was making the testimony the one witness and I think it may be the same same juror only referred to a co-worker as nigger when the co-worker was not around that seems to suggest to me that the juror knows that my goodness there's something wrong here I'm seeing that person desperately which would call undermine subjective honesty when they said nor I can be fair that wasn't exactly the question was that's not the first question I think your honor that sort of gets to the crux of the case whether or not this court is prepared to declare that the use of the slur is in and of itself indicative of subjective dishonesty given the questions that were asked at what year and again I would note that both the trial court mr. Williams defense attorney the defense attorney for his I believe was his stepbrother and co-defendant and basically all the participants at the first trial had the opportunity to analyze the credibility of these jurors as they gave their responses during what year as did the district holding it you've been a trial attorney I assume how many cases you started in a part of but we I know what the law says you and I both know the value of demeanor testimony and demeanor evidence I know that's not any of the unit there given the state of the law but saying that you can assess the credibility of a witness when they say no I can be fair I bet I can't be fair the first thing to go to the judge of mind is this person's trying to get out of jury duty and then there's this little kabuki dance that takes place where the other side comes back you get the person say oh yeah I can be fair then if I guess if it goes no no I can't be fair it's just not a really persuasive argument I mean there may be a difference from my colleagues well I certainly recognize that your honor but at the same time none of the courts that have ever looked at these issues have ever proposed a workable alternatives in fact of water is kind of viewed as sort of the first line of defense to prevent situations like this from occurring so at least the process is given some value by Supreme Court and you know all the courts on down that you know they they seem to acknowledge there's some value to this process I'm not going to go against death centuries of law I'm not suggesting there's no to it I'm suggesting in this record one has to be at least concerned with the veracity of the answers that these jurors gave certainly and you know your honor I'm gonna frankly admit that this record is troublesome there's certainly some problematic language and there are some some real issues here but that being said at the same time we run the risk of running a file of the very same considerations that underlie the no impeachment rule it's judge beavis could you help us if we if we need to draw some lines here would this case have been different if Geisler Bauer handshake camp house these four jurors that the hearing was focusing on if they had let's say Geisler Bauer handshake let's say they had said they've been asked it what dear you ever use the the the n-word and no no no no I never used the n-word and then this would they would would a defendant have relief in that case it would be a very much of a different analysis and I think his case would be much stronger because and again that's what I tried to emphasize in my brief was looking at precisely the questions they were asked and had they been asked that question and had they been dishonest certainly it's a different calculus so you know I'm more than willing to concede that to the court's question but I would ask that doing what dear or after the trial I'm talking about in terms of what dear no I don't know any trial judge would let that question be asked during bar dear unless there's some reason for it beforehand I cannot imagine a trial judge allowing attorney to ask that question more idea I just I can't gather it and I tried out this for 10 years for the murder and homicides and I certainly and the example that I gave the DA went crazy assistant day went crazy when I agreed to ask the question on board here about whether or not the jurors believe that a white woman could ever consent to having sex with a black man the day was apoplectic of that it was a really good game we have a lot of respect for after the answers came out and it was developed he became the leader in the courtroom in terms of trying to turn this stuff out but no no judges don't let that question be a simple idea that I know all they can imagine well I think practically speaking I agree with your honor I was just speaking purely hypothetically in terms of if it had been asked you know I grant the practicalities that it probably would not have been asked nor I don't know that counsel would have necessarily wanted to be asked you the defense counsel or the Commonwealth at that point but you that certainly would have put the case in a different light had that question been asked and had that question not been entered answered honestly and I think that you agree that that's an impossibility basically it's all right we should never occur council don't you agree that but the claims of racial bias are especially suited for more objective inquiry after all I didn't see no Rodriguez single out racial bias is different than other formal name well-ordained forms of juror misconduct yes it certainly did however okay and even if our review is deferential don't you agree there there's a quick there's clear error if we left with a definite and firm conviction that a mistake has been made well I think your honor although Pena Rodriguez certainly did acknowledge and pay special attention to the pernicious influence of racial discrimination the criminal justice system I did not give carte blanche for relief or carte blanche even for inquiry in light of rule 606 B and simply put again under the very specific facts and circumstances in this case we just don't believe that mr. Williams has made out what he needs to make out in order to establish he's been entitled to relief okay given the jurors own admissions that they have used racial slurs in the past as well as the testimony offered by the two trial witnesses and one of the jurors showing that racial comments were made in connection with the trial itself why shouldn't we conclude that this court made a mistake here well I think going under the analysis in Pena Rodriguez mere offhanded remarks abstinence showing that such attitudes played a definitive role or maybe not definitive is the right word but a strong role in the outcome the proceeding the Supreme Court's Phil expressed qualms about being able to entertain that type of testimony that type of evidence you think justice Kennedy would have read this record and referred to these remarks as mere offhanded remarks well given that so many of them occurred in times places and circumstances far removed from the trial I think that's sort of an open question um what was driving evidence here that was that we said this is said by jurors that act at the juror and the juror room only the only friend there there is a question as to identifying the juror that said that the specific words but the conduct of the jurors that testified as to what occurred in the jury room let's not spell it's not it's not breathtaking again it's very troubling um but that being said under the applicable very troubling breathtaking other than the fact that if you say it's breathtaking it under my judgment what's the difference I'm sorry your honor I didn't hear that the question was isn't this breathtaking you said it's very troubling when I other than the fact that would undermine your argument what is the difference between breathtaking and very troubling well practically speaking I don't know that there's a tremendous amount of difference between those two terms counselor Kenya Rodriguez involved the use of the statements at the trial in regard to the defendants conduct with the way I read appendix 133 is none of the nine living jurors heard racial slurs being used during the trial or in relation that we're talking here about some testimony about statements that they made before or after the trial and so is that different I think that it is your honor and thank you for pointing that out again and that's one of the points we've been trying to make throughout these proceedings that you run the risk when you're looking at conduct or statements that are so far removed from the trial or from the actual context it really opens up an unlimited area of inquiry and all the concerns about during the during the trial and during deliberation and thought from that was from Negro lover wasn't that right hope your daughter Murray's one wasn't that during the trial that that's the Montgomery affidavit whose admissibility is questioned I thought we were focused but I mean maybe we're switching back and forth between the two issues but we had been talking about what these what these jurors were testifying to that Montgomery affidavit is the separate Pena Rodriguez 606 B issue that is correct your honor and again the Montgomery affidavit was very light on detail in terms of time place speaker anything like that and one of the issues that we ran into was never really having had an opportunity to test the veracity of Miss Montgomery or her her account or statements and so she's obviously deceased and that is why we thought it would not be proper to admit her affidavit at this point because it has not been subject to proper testing for an issue of this magnitude two minutes well don't you agree that calling someone a dumb nigger in the workplace or a juror stating that it's in a courthouse the hallway a damn nigger always causing trouble that goes far beyond mere banter and it implicates more than just a denial of perfect trial if someone has that type of thoughts in their mind it is again very troubling but at the same time I don't know that it's possible to articulate a workable standard that would not so basically do violence the system in terms of trying to perfect it because it is again a question of drawing the line in that are we prepared to find that anytime a juror has ever uttered a racial slur that they're precluded from jury service and that if a defendant can point to a comment of that nature from a juror that they're entitled to that would be a whole board that would be a whole more rule wouldn't it to say that anytime a person has uttered a racial slur they'd be precluded from jury service and the trial involving the group did that that was the subject of that we should so that that would be a whole world someone said in this I think was Brendan said in the dissent that would really be too much justice we can't have that can we including jurors who have uttered racial slurs from being injurious juries involving that racial we can't tell me that can we no I think that would certainly be extremely unworkable and but at the same time when you look at the actual conduct statements that mr. Williams is pointing to I don't know how you would draw a line short of that I mean we can't have a rule where jurors will bend about the term nigger have not allowed to sit on juries where black folks are on trial that I agree that we can't have such a situation couldn't imagine such a situation it's almost able fears time is expired okay there are no excuse me your honor I'm sorry I didn't know if you wanted to respond at all to the question my assessment that would be just a terrible state of affairs if you allow such a situation to prevail very much so your honor and again trying to come up with a workable solution here I think is where sort of the issue lies and I think that both the Peña Rodriguez court and the other courts that looked at this have sort of recognized that as an issue and simply put I just don't know that mr. Williams has made out what he needs to show under the applicable law okay thank you my transcript of the argument yes please okay can we get a transcript I'll ask the appellee to pay for that given the fact that it's a woman to open it about a public defender and if you check with mr. Kane you know if you're not aware of it already you'll go over the logistics of how you get the transcript okay okay we think come before the argument will take matter under advisement